UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

MATTHEW E.[1],

    Plaintiff,

v.                                         1:21-CV-73 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

———————————————————

## DECISION AND ORDER

Plaintiff Matthew E. brought this action under 42 U.S.C. § 405(g) of the Social Security Act, seeking review of the decision made by the Commissioner of the Social Security Administration finding that he was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 9. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 11. For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Disability Insurance Benefits ("SSD") filed on April 2, 2018.[2] Tr. 130.[3] Plaintiff's application was initially denied, and he requested a hearing before an administrative law judge ("ALJ"). Tr. 41-83. Following the hearing, ALJ Sharda Singh issued a decision finding that Plaintiff was not disabled. Tr. 23-40. The Appeals Council denied Plaintiff's request for review, after which he commenced this action. Tr. 1-4; Dkt. 1.

## LEGAL STANDARDS

### I. District Court Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive when supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

---

[2] Plaintiff applied for SSD benefits only. To receive SSD, a claimant must show that he became disabled while meeting the Act's insured status requirements. *See* 42 U.S.C. § 423(d)(1)(A); *Schillo v. Kijakazi*, 31 F.4th 64, 69-70 (2d Cir. 2022).

[3] The filing at Dkt. 7 is the transcript of the proceedings before the Social Security Administration. All references to Dkt. 7 are hereby denoted "Tr. __."

While the Court does not determine *de novo* whether the claimant is disabled, the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable doubt as to whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (holding that the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II. <u>Disability Determination</u>

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. *Id.* § 404.1572. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. *Id.* § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits

3

the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If such criteria are met, then the claimant is declared disabled. *Id.* § 404.1520(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *Id.* § 404.1545.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. *Id.* § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. *Id.* § 404.1520(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her/his RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of

4

jobs in the national economy exists that the claimant can perform given her/his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I. The ALJ's Decision

The ALJ determined that Plaintiff last met the insured status requirements on June 30, 2017 and that he had not engaged in substantial gainful activity since his alleged onset date of August 8, 2016. Tr. 28-29. The ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease, lumbar radiculopathy, narcolepsy, and cataplexy. Tr. 29. The ALJ concluded that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [h]e was able to lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently. During an eight-hour workday, he was able to sit for six hours and stand/walk for six hours. He was unable to climb ladders/ropes/scaffolds. He was able to occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. He needed to avoid hazards such as moving machinery and unprotected heights. He was unable to drive.

Tr. 29.[4]

---

[4] Light work involves:

The ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 32. The ALJ concluded that Plaintiff was not disabled because his age, education, work experience, and RFC allowed him to perform jobs existing in significant numbers in the national economy. *Id.* The ALJ concluded that Plaintiff had not been under a disability at any time from August 8, 2016, the alleged onset date, through June 30, 2017, the date last insured. Tr. 33.

## II. Plaintiff's Arguments

Plaintiff argues that the ALJ failed to evaluate properly the medical opinion provided by Neil Mushlin, D.O. and the administrative finding provided by non-examining Stage agency medical consultant, Chankun Chung, M.D. Dkt. No. 9 at 10-16. Plaintiff also argues that the ALJ "erred in rejecting . . . Plaintiff's statements concerning the intensity of his narcolepsy." *Id.* at 16-19.

---

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

### III. Analysis

#### A. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in her evaluation of the medical opinion evidence in the record. Dkt. No. 9 at 10-16. First, Plaintiff asserts that the ALJ provided insufficient analysis to support her determination that Dr. Mushlin's opinion was unpersuasive. *Id.* at 13. Second, Plaintiff asserts that the ALJ erred in finding Dr. Chung's opinion persuasive because the doctor did not review the entire record. *Id.* at 15.

Under 20 C.F.R. § 404.1520c the ALJ must articulate how he or she considered certain factors in assessing medical opinions and prior administrative findings. *See* 20 C.F.R. §§ 404.1520c(a)-(c).[5] The regulatory factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). An ALJ must explain his or her approach with respect to the first two factors when considering a medical opinion, but need not expound on the remaining three. *Id.* § 404.1520c(b).

The first factor—supportability—looks at how well a medical source supported and explained his or her opinions about the patient. The strength of a

---

[5] A prior administrative medical finding is a finding, other than the ultimate determination about whether a plaintiff is disabled, about a medical issue made by the SSA's Federal and State agency medical and psychological consultants at a prior level of review in a plaintiff's current claim based on their review of the evidence in plaintiff's case record. 20 C.F.R. § 404.1513(a)(5).

7

medical opinion is increased as the relevance of the objective medical evidence and explanations increase. 20 C.F.R. § 404.1520c(c)(1). The second factor—consistency—looks at whether a medical provider's findings and opinions are consistent with those of other medical providers and medical evidence. The more consistent a particular medical source opinion is with other evidence in the medical record, the stronger that medical opinion becomes. *Id.* § 404.1520c(c)(2).

On May 22, 2017, Dr. Chung reviewed the record available at that time. Tr. 115-121. Dr. Chung opined that Plaintiff could perform the exertional demands of light work. Tr. 120. Specifically, Dr. Chung indicated Plaintiff could stand/walk for four hours in an 8-hour workday and sit for "about" six hours in an 8-hour workday. *Id.* Dr. Chung stated that he relied on a 2014 MRI of Plaintiff's lumbar spine, his BMI, and notations that he ambulated without an assistive devise, but with a right sided limp. *Id.* Dr. Chung opined that Plaintiff could occasionally: climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. *Id.* He opined that Plaintiff could never climb ladders/ropes/scaffolds. *Id.* Dr. Chung indicated that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards (machinery, heights, etc.). Tr. 121.

On December 20, 2016, Dr. Mushlin completed a form, "Sleep Disorders Residual Functional Capacity Questionnaire." Tr. 609-612. He listed Plaintiff's diagnoses as narcolepsy and cataplexy. Tr. 609. When asked if Plaintiff had daytime sleep attacks, Dr. Mushlin answered "yes." *Id.* When asked if the attacks

could "occur suddenly and in hazardous conditions," he answered, "yes." *Id.* When asked how often the attacks typically occur, Dr. Mushlin wrote "varied." *Id.* Dr. Mushlin indicated that Plaintiff had a positive polysomnogram and multiple sleep latency tests. Tr. 610.

When asked to provide functional limitations, such as Plaintiff's ability to sit, stand, or walk, Dr. Mushin wrote "N/A." Tr. 610-611. When asked to estimate how often Plaintiff would be likely to be absent from work as a result of his impairments or treatment, Dr. Mushin checked "about once or twice a month." Tr. 612.

In evaluating the opinion evidence, the ALJ found Dr. Mushin's opinion "unpersuasive." Tr. 31. The ALJ reasoned that Plaintiff's conservative treatment for sleep issues, and normal mental/neurological assessments did not support the doctor's limitations. *Id.* The ALJ further reasoned evidence in the record did not support Dr. Mushlin's "off-task" limitation. *Id.*

Plaintiff asserts that the ALJ provided an insufficient analysis of Dr. Mushlin's medical opinion. Dkt. No. 9 at 13. Plaintiff appears to argue that the ALJ provided only a conclusory statement to support her determination that Dr. Mushlin's opinion was unpersuasive. *Id.* at 13. Further, Plaintiff argues that the ALJ erred in considering Plaintiff's "conservative treatment" in assessing the doctor's opinion. *Id.* at 13-14.

To be sure, a conclusory statement that a doctor's opinion is not supported by the record is inadequate to support the ALJ's determination. *Drake v. Saul*, 839 F. App'x 584, 586 (2d Cir. 2020) (the ALJ's cursory statement that "[n]o weight is

9

assigned [to his] assessment regarding time off task because it is not supported by the evidence" is inadequate.). But when the ALJ's reasoning can be gleaned from the record, additional discussion is not required. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"); *see also Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (if an ALJ commits "procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record[,]" the Court "could affirm if a searching review of the record assures [the Court] that the substance of the [regulation] was not traversed.") (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).

Here, the ALJ provided sufficient analysis to support her evaluation of Dr. Mushlin's medical opinion. The ALJ concluded that the doctor's opinion was not consistent with Plaintiff's conservative course of treatment and normal mental and neurological findings. Tr. 31; *see* 20 C.F.R. § 404.1520c(c)(2) (The more consistent a particular medical source opinion is with other evidence in the medical record, the stronger that medical opinion becomes.). Although the ALJ did not expand on her reasoning in her analysis of Dr. Mushlin's opinion, the ALJ's reasoning can be gleaned from the record.

10

First, the ALJ outlined evidence in the record regarding Plaintiff's narcolepsy/cataplexy treatment. Tr. 31. The ALJ noted that, between October 2015 and May 2017, Plaintiff reported that he was doing well on medication. *Id.* Indeed, Plaintiff reported that he was "doing well" with mediations; however, he had to discontinue one of his medications due to side-effects. Tr. 523, 526, 590. Plaintiff started a different medication, which he reported as "helping" with "no side effects." Tr. 528, 597 ("doing well" with medications), 600.

The ALJ also relied on objective mental status examinations, which indicated no deficits. Tr. 31. As cited by the ALJ, examinations showed Plaintiff had normal memory, appropriate mood and affect, and normal insight and judgment. Tr. 459, 463, 475, 483, 755 (memory "grossly intact"), 770. Therefore, although the ALJ did not discuss specific evidence in her evaluation of the persuasiveness of Dr. Mushin's opinion, her reasoning is clear from her written decision.

Second, contrary to Plaintiff's argument, the ALJ did not err in her reliance on Plaintiff's "conservative treatment" as one factor in her analysis of Dr. Mushlin's opinion. Dkt. No. 9 at 14, citing *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). Plaintiff's reliance on *Burgess* is misplaced. In *Burgess*, the Second Circuit determined that the opinion of a "treating physician" should not be "discounted merely because he has recommended a conservative treatment regimen." *Burgess*, 537 F.3d at 129.[6] However, although ALJs are cautioned not to rely solely on

---

[6] Of note, the medical opinion in *Burgess* was a treating doctor's diagnosis. *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008) ("[T]he ALJ failed to give good reasons for not crediting [treating source's] opinion that Burgess had a bulging disc

11

conservative treatment in assessing medical opinions, they may consider a plaintiff's conservative course of treatment "if that fact is accompanied by other substantial evidence in the record." *Id.*, at 129. Here, the ALJ considered Plaintiff's conservative treatment as one factor in her overall determination that Dr. Mushlin's opinion was not persuasive. In sum, the ALJ properly evaluated Dr. Mushlin's opinion.

The ALJ found Dr. Chung's finding "persuasive." Tr. 31. The ALJ concluded that his findings were "generally consistent with the overall record." *Id.* However, the ALJ concluded that the doctor "overstate[d]" Plaintiff's standing and walking restrictions. *Id.*

Plaintiff asserts that the ALJ erred in finding the opinion of Dr. Chung persuasive. Dkt. No. 9 at 15. Plaintiff asserts the doctor did not review all of the evidence in the record—specifically a 2017 MRI and Dr. Mushlin's opinion—and, therefore, his opinion was stale. *Id.* at 15. Contrary to Plaintiff's assertion, the ALJ did not err in concluding that Dr. Chung's administrative finding was persuasive.

In general, the fact that a consultative source did not review the entire record does not preclude the ALJ from considering the opinion. *See Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (fact that consultative examiner's specialty is

---

encroaching on the space that is normally there in the nerve root effectively pinching that nerve.") (internal quotations omitted). First, under the new regulations diagnosis are no longer considered "medical opinions," but are instead considered "other medical evidence." *Compare* 20 C.F.R. § 404.1527(a)(1) *with* 20 C.F.R. § 404.1513(3). Second, under the new regulations the "treating physician rule" is no longer applicable. *See* 20 C.F.R. § 404.1520c(a).

12

pediatrics and that his review did not include an MRI did not preclude the ALJ from assigning the opinion significant weight); *see Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) ("No case or regulation Camille cites imposes an unqualified rule that a medical opinion is superseded by additional material in the record, and in this case the additional evidence does not raise doubts as to the reliability of Dr. Kamin's opinion."). Further, remand may be required where subsequently submitted evidence directly contradicts earlier reports and the ALJ failed to discuss the evidence. *See Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 644 (2d Cir. 2020).

The fact that Dr. Chung did not review the entirety of the record did not render his opinion impermissibly stale. The evidence submitted after the doctor reviewed the record—such as an MRI and Dr. Mushlin's statement—did not directly contradict his report and the ALJ thoroughly discussed the evidence in her decision. Indeed, in evaluating Plaintiff's lumbar impairment, the ALJ outlined the 2017 MRI findings of multi-level spondylotic changes, but no nerve root involvement during the period at issue. Tr. 31. The ALJ also considered objective findings on examinations such as normal gait and sensation, and 4/5 extremity strength. *Id.* The ALJ also considered Dr. Mushlin's opinion, which was submitted after Dr. Chung reviewed the record. *Id.* Therefore, although Dr. Chung did not have an opportunity to review the entirety of the record before making his finding, the ALJ reviewed all of the medical evidence in the record in making her RFC determination. *See Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citing *Matta*

*v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (an ALJ's conclusions need not "perfectly correspond with any of the opinions of medical sources cited in his decision" because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole").

### B. Subjective Complaints

The ALJ must employ a two-step analysis to evaluate a plaintiff's reported symptoms. *See* 20 C.F.R. § 404.1529. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* § 404.1529(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit a plaintiff's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to relieve his pain or other symptoms; (5) other treatment the plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures that the plaintiff takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

14

In assessing Plaintiff's subjective complaints, the ALJ concluded that his medically determinable impairments could reasonably be expected to cause "some of the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 30.

Plaintiff argues that the ALJ's reliance on his conservative treatment for back pain and improvement with medication for narcolepsy was "insufficient." Dkt. No. 9 at 18. Plaintiff further asserts that his ability to perform activities of daily living fails to show an ability to work on a regular and continuing basis. *Id.*

Here, the ALJ properly assessed Plaintiff's subjective complaints. The ALJ considered Plaintiff's testimony that he was unable to work due to back pain that prevented him from "sitting longer than 20 minutes at one time, standing longer than 15 minutes at one time, walking farther then five blocks at one time, and lifting more than five pounds." Tr. 30. The ALJ also considered Plaintiff's testimony that, due to narcolepsy and cataplexy, he had trouble sleeping and maintaining concentration, had episodes of "extreme exhaustion," and required three-to-four naps a day. *Id.*

The ALJ did not err in her reliance on objective treatment evidence in assessing Plaintiff's statements. Dkt. No. 9 at 18. The ALJ properly compared Plaintiff's subjective complaints to the objective medical evidence in the record. Tr. 30-31. The ALJ considered objective treatment observations, which documented

15

Plaintiff's ability to ambulate unassisted, his sensation was intact, he had full or 4/5 muscle strength, and he lacked mental status deficits. Tr. 31; *see* 20 C.F.R. § 404.1529(c)(3)(iv)-(vi). The ALJ also relied on Plaintiff's statements to providers that medication worked well for his narcolepsy. *Id.* Thus, the ALJ properly noted the lack of positive findings on examination in her assessment of Plaintiff's subjective complaints. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (in assessing plaintiff's subjective complaints the ALJ properly considered objective observations such lack of muscle spasm or motor/sensory loss and no contractures).

And the ALJ properly considered Plaintiff's daily activities as one factor in her assessment of Plaintiff's subjective complaints. Tr. 30; *see* 20 C.F.R. § 404.1529(c)(3)(i). Contrary to Plaintiff's assertion, the ALJ did not equate Plaintiff's ability to perform daily activities with an ability to perform substantial gainful employment. Dkt. No. 9 at 18. The ALJ noted that Plaintiff cared for pets, prepared simple meals, did light cleaning, drove, watched television, and shopped for groceries. Tr. 30; *see Poupore*, 566 F.3d at 307 (the ALJ properly considered plaintiff's ability to perform daily activities such as childcare, driving, and household chores, in his assessment of plaintiff's subjective complaints). Therefore, the ALJ did not err in her evaluation of Plaintiff's subjective complaints.

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's cross motion for judgment on the pleadings (Dkt. 11) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 9). The Clerk of the Court will close this case.

SO ORDERED.

Dated:   August 7, 2023
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE